[No. 18531.   *En Banc*.   February 26, 1925.]

JOHN DANZ et al., *Appellants*, v. AMERICAN FEDERATION OF MUSICIANS LOCAL 76 et al., *Respondents*.[1]

INJUNCTION (39)—TRADE UNIONS (1) — PICKETING — RIGHT TO PICKET. Under Rem. Comp. Stat., §§ 7611-7614, picketing in any form is unlawful, and it is error, in an injunction against picketing, to except and permit resort to picketing by "peaceful and lawful means" by "observers" stationed near plaintiff's place of business for the purpose of reporting and disciplining members of the union patronizing the place.

Appeal from a judgment of the superior court for King county, French, J., entered February 1, 1924, in favor of the plaintiffs, in an action to enjoin picketing, tried to the court.   Modified.

*Roberts & Skeel* and *N. A. Pearson,* for appellants.

*G. F. Vanderveer,* for respondents.

*Allen & Griffith, amici curiae.*

MACKINTOSH, J.—The appellants, owners of moving picture theatres, began this action seeking to enjoin the respondents from picketing their theatres. The complaint says that the respondents were attempting to "enforce what they call the closed shop," and that in aid of that effort they were resorting to picketing.

[1]Reported in 233 Pac. 630.

Upon a trial, the court enjoined the respondents from trespassing upon the plaintiffs' property, or in any manner obstructing free access to and egress from the theatres; from obstructing free passage along the sidewalks in front thereof; from carrying or displaying in front of the theatres, or within one hundred feet thereof, any banner, scarf, badge or other insignia, bearing inscriptions that the theatre owners or employees were unfair, but providing that:

". . . nothing herein shall be construed to enjoin or restrain the defendants or any of them from stationing observers near the entrances to said theatres for the purpose of observing and reporting to their several unions for discipline any members of any unions with whom the defendants are in any manner affiliated, provided said observers do not obstruct the ingress to or egress from said theatre nor obstruct traffic along the street in front thereof, nor address intending patrons thereof; nor shall anything herein be construed to enjoin or prohibit the defendants or any of them from wearing a sash or badge declaring the existence of a strike against said theatre or its owner; provided, however, that not more than one person wearing such sash or badge shall be stationed near any of said theatres at any one time and such person shall not approach nearer the entrance of said theatre than three feet from the sidewalk curb line, nor address intending patrons thereof."

From this quoted portion of the injunction, the appellants have appealed.

A great deal of discussion has taken place in the briefs as to whether the controversy between the appellants and the respondents furnished justification for a strike, whether a strike was really in existence, whether the controversy had ceased or whether one had ever existed, whether there can be a lawful strike to enforce "the minimum rule" of the respondents, which is the name given to the regulations of the re-

spondents which they are charged with attempting to enforce upon the appellants, and whether a primary boycott is lawful. The discussion of these questions covers generally the review of the many and conflicting opinions evolved from the consideration of industrial controversies; but, as we view it, these questions are not involved in the case at bar, the sole question being whether picketing is lawful.

Courts have expressed varying views upon the question of the legality of picketing, but the respondents in this action make no claim that picketing is always allowable and admit in their reply brief to the brief of *amicus curiae* that picketing is unlawful when coercive, but that otherwise picketing is lawful. What they mean is that picketing, to be enjoined, must be accompanied by violence in some degree. Support for this view may be found in the decisions of some courts, but this court has committed itself to a doctrine different than that contended for by the respondents and has declared all picketing unlawful, announcing that the term sometimes used of "peaceful picketing" is self-contradictory and meaningless, that picketing, in and of itself, is coercive and that that is its purpose and effect.

In *Jensen v. Cooks' & Waiters' Union*, 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302, picketing was restrained by injunction, the court saying that the business of the respondent could not be ruined by inducing his patrons and other persons not to deal with him, and that persons could not lawfully congregate about the entrance of his place of business and there, "either by *persuasion,* coercion or force," destroy the business. The respondents seek to bring this case within the operation of the theory which they advance by asserting that, in the *Jensen* case, *supra,* intimidation,

threats and violence were being resorted to and that the court, of course, was correct in enjoining such conduct, The language of the opinion, however, also covers a situation where persuasion is resorted to to enforce certain demands.

In *St. Germain v. Bakery & Confectionery Workers' Union No. 9*, 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F 824, this court flatly and squarely decided that all picketing is unlawful:

"The only object of maintaining these pickets was to intimidate these appellants and their patrons. There could have been no other object, because the union laborers had been called out. They were not working there, and in order to require these appellants to employ union labor, the respondents sought to, and did, intimidate the public from entering the stores and dealing with the appellants. . . . Whether the picketing was peaceable or otherwise, under the facts in this case, is entirely immaterial, because the sole object of the respondents was to intimidate, not only the public, but also these appellants, and force them to enter into a contract which they were unwilling to enter into. . . . The idea upon which picketing by any means cannot be sustained is that it intimidates the public from entering into the place, and doing business with a person before whose store or place of business a line of guards is stationed. Where a line of guards, consisting of one or more, is stationed in front of a place of business, every one knows that such guard is there for the purpose of intimidating and preventing the public from dealing with the person whose place of business is picketed. That this is contrary to the spirit of our institutions, and the right to conduct a lawful business in a lawful way, without molestation of other persons, needs no argument to sustain it."

In the concurring opinion in this case is found:

"There are some cases holding that picketing, so long as it does not partake of the character of an active intimidation by word or force of arms, is lawful, but the trend of all modern authority is to the contrary."

In *Baasch v. Cooks Union, Local No. 33,* 99 Wash. 378, 169 Pac. 843, the rule of the two former cases was followed. It is claimed, however, that this court has receded from that rule in the later case of *Pacific Coast Coal Co. v. District No. 10, United Mine Workers of America,* 122 Wash. 423, 210 Pac. 953. But, as we read this later case, it is not subject to such construction. It contains a citation from, and reference to, the decision of the supreme court of the United States in *American Steel Foundries v. Tri-City Central Trades Council,* 257 U. S. 184, where, under the provisions of §§ 6 and 20 of the Clayton act of Congress, 38 Stats. at Large, 378, it was held that peaceful and lawful means might be resorted to to persuade persons to work or to abstain from working, or to cease to patronize or employ any party to an industrial dispute. The law of this state, Laws of 1919, p. 568 (§§ 7611-7614, Rem. Comp. Stat.) [P. C. § 3547-1], which is largely copied from the Clayton act, omits those portions of the Clayton act which the supreme court of the United States held permitted the use of what amounts to picketing, and therefore the *Tri-City* case is of no binding force in this jurisdiction, and the reference to it in the *Pacific Coast Coal Co.* case recognizes that the decision was under an act which "contains more forbidden matter than our act does" and thereby limits the right to injunctive relief. The purpose of the reference to the *Tri-City* case in the *Pacific Coast Coal Co.* case was merely to show that, if the allegations of the complaint under consideration by this court were sustained by the proof, that even under the *Tri-City* decision the acts would be forbidden. There was no attempt or intention to recede from the rule laid down in the *St. Germain* case, *supra.* The reference in the *Pacific Coast Coal Co.* case that "it is also held that the extent to which

picketing in an industrial dispute should be enjoined is a question for the judgment of the judge who has heard the witnesses, familiarized himself with the locus in quo, and observed the tendencies to disturbance and conflict. The purpose should be to prevent the inevitable intimidation by the presence of large groups of pickets, but to allow missionaries,'' is not a statement of the rule as to picketing in this state, but is a statement of what was held under § 20 of the Clayton act as being the rule in the Federal court. As we have already said, we find nothing in our law corresponding with § 20 of the Clayton act, and the legislature in 1919 must have purposely caused the omission, that legislature having full knowledge of the decision of this court in the *St. Germain* case, *supra,* handed down in 1917.

The fact that picketing is carried on under some other name makes no difference to its legal effect. The force exerted by the persons, or ''observers,'' in front of the appellants' place of business, wearing badges calling attention to the controversy between the appellants and respondents, is no less coercive because the decree gives them the name of observers than it would have been had it called them pickets.

The rule in the *St. Germain* case is as equally applicable to the situation here as it was to the situation in the case where it was announced. For that reason the decree of the lower court is modified by striking therefrom the portion which has been quoted hereinabove.

All concur.