[No. 26450. Department Two. March 11, 1937.]

ROY J. KIMBEL, *Appellant*, v. LUMBER & SAW MILL WORKERS UNION No. 2575 *et al., Respondents.* [1]

*J. W. Graham,* for appellant.

*Vanderveer & Bassett,* for respondents.

BEALS, J.—In his complaint, plaintiff alleged that he was engaged in logging operations in Mason county; that the defendant Lumber & Saw Mill Workers Union No. 2575 (hereinafter referred to as Union 2575) claimed jurisdiction over the territory within which plaintiff was operating; that defendants Carlson and Davis were officers of the union, and the defendants named as John Doe and Richard Roe were, on behalf of defendant union, picketing plaintiff's logs; that defendant Lumber & Saw Mill Workers Union No. 2515 (hereinafter referred to as Union 2515) is a labor union, having its headquarters at Olympia, to a mill in which city plaintiff had been in the habit of selling his logs; that defendant Union 2575 had sought to unionize

[1] Reported in 65 P. (2d) 1066.

plaintiff's logging camp; that plaintiff had stood neutral in the matter; that his employees were satisfied with their wages, hours of labor, and working conditions; that, notwithstanding these facts, defendant Union 2575 reported to Union 2515 that plaintiff's logs were unfair, whereupon the members of the latter union refused to work on plaintiff's logs; that defendant Union 2575 also, from and after April 17, 1936, picketed plaintiff's logging plant and placed banners and signs in conspicuous positions near the same, stating that plaintiff was unfair to organized labor.

Plaintiff alleged that he had been damaged in the sum of two thousand dollars, and that the sole purpose of the defendants in conducting the operations above referred to was to compel plaintiff to sign a contract recognizing the union, and to require plaintiff to coerce his employees into joining the union.

By their answer, defendants denied the material allegations of the complaint, pleaded the legal status of defendant unions, and that an ''employers association,'' during the winter of 1936, agreed with the unions upon a wage scale; that plaintiff, who had been a member of the employers association, thereupon withdrew therefrom, and refused to pay the wage scale which the other members had agreed upon; that early in April, 1936, plaintiff reopened his camp with a crew who received wages less than the scale above referred to, whereupon defendant Union 2575 notified other unions of the facts and stationed men on the county road near plaintiff's logging camp, for the purpose of obtaining information, and also to inform plaintiff's employees and others of the controversy existing between the unions and plaintiff.

Plaintiff having replied to the affirmative defense contained in defendants' answer, the action was tried

to the court, and resulted in a judgment of dismissal, from which plaintiff has appealed. Appellant assigns error upon the entry of the judgment of dismissal, claiming that the same was contrary to the evidence.

It is not contended that the men stationed by respondent unions near the scene of appellant's operations were guilty of any violence or intimidation. On the contrary, it appears that, while insisting upon their right to occupy the positions in which they were placed, talk to appellant's employees, and maintain their banners, the men were guilty of no other conduct objectionable to appellant.

Respondents admit that no obligation rested upon appellant to make any working contract with the union, and that he was legally free to pay his employees any scale of wages which they were willing to accept.

During the month of January, 1936, the union posted notices in the vicinity of appellant's plant, stating that appellant's operations were unfair. A few days thereafter, appellant closed his camp and put his men and equipment on some road construction work which he had contracted to perform.

Early in April, 1936, appellant, who during the preceding month had reopened his logging camp, had approximately a dozen sections of logs in the water, which, about April 15th, were towed by a union boat from the booming ground to the mill at Olympia, above referred to. Appellant testified that April 17th a few of his employees, who appellant testified he thought were members of the union, were called out by an agent of Union 2575, and that thereafter the logging operations were continued notwithstanding the action of the union. From and after April 17th, Union 2575 stationed men near appellant's logging camp and put up banners and signs stating that appellant was unfair to organized labor. It appears that the agents of Union

2515 at Olympia prevented for a time the cutting of appellant's logs which had been towed to that city. Negotiations between appellant and the unions were continued, but no agreement was reached.

It clearly appears that several of appellant's employees belonged to the union, and that these men quit work when the union declared appellant's camp unfair. The evidence discloses that, prior to this time, some of the union men who were working for appellant had stated to the officers of the union that appellant was not paying wages according to the going scale to which other employers and, apparently, the union had agreed. It does not appear that appellant was informed that any such complaints had been made, and appellant argues that the sole question presented on this appeal is whether or not a labor union may demand of an independent operator that he sign a contract with the union, and upon the operator's refusal to sign, claim that a labor dispute exists, picket his plant, and declare his products unfair.

We do not so understand the issues. At least half a dozen of appellant's employees were members of the union. Appellant was not paying the scale of wages fixed by the contract between the union and other loggers. It appears from the evidence, as stated by the trial court in its memorandum opinion, that at least one of the reasons that the union men who were working for appellant were called out was on account of the low wage scale paid by appellant.

▓ Under the law, workmen have the right to organize and form unions. Rem. Rev. Stat., § 7611 [P. C. § 3547-1], reads as follows:

"It shall be lawful for working men and women to organize themselves into, or carry on labor unions for the purpose of lessening the hours of labor or increasing the wages or bettering the conditions of the mem-

bers of such organizations; or carry out their legitimate purposes by any lawful means.''

As stated in the opinion of this court in the case of *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P. (2d) 397, working men have ''the right to cease work, or to strike, or in the lawful way to call a strike and persuade others to join them.'' The right of labor unions to convey to the public at large and persons specially interested information to the effect that a certain business or plant has been by labor unions declared unfair has been several times upheld. *Adams v. Local No. 400 of Cooks etc.*, 124 Wash. 564, 215 Pac. 19; *Sterling Chain Theaters v. Central Labor Council*, 155 Wash. 217, 283 Pac. 1081.

In the case at bar, it appears that the representatives of the union and the signs and banners giving notice of the union's position were stationed upon the road at a considerable distance from the land upon which appellant was carrying on his logging operations. Appellant was not operating a store, he sold no goods on the premises, nor did customers frequent the land from which he was cutting logs. It is not contended that the men who continued to work for appellant were in any wise molested or interfered with by any representatives of the union. Appellant himself testified, referring to the union men stationed on the road: ''As far as I know, it was peaceable enough,'' and, later:

''Q. You say that the pickets were orderly; never any violence, was there? A. No violence. Q. Never was any threat of any violence, was there? A. Not that I know of. The sheriff went out the first day and talked to them and got their promise that there would be peaceable picketing. Q. And they kept their promise, didn't they? A. Yes.''

The record does not sustain appellant's contention that his camp was declared unfair for the sole reason

that he had refused to sign a contract with the union. Respondents admit that appellant had the right to refuse to enter into any contract with the union, and to pay any wages mutually satisfactory to himself and his employees. Appellant testified that, in employing labor, he did not discriminate between union and nonunion men, and that, so far as he was concerned, his men were free to join the union if they wished to do so.

Appellant knew that, during the month of January, 1936, the union had declared his plant unfair. He knew the scale of wages which he was paying, and on cross-examination, in response to the question, "Do you know of anybody paying as low wages as you are," answered, "I don't know." He also stated that he had heard of the scale which had been agreed upon between the unions and certain of the employers, which it appeared called for wages at a rate considerably higher than appellant was paying. The representatives of the union and the notices stating that appellant's operations had been by the unions declared unfair were at some distance from the place where appellant's men were actually working, and it clearly appears that no representative of the union at any time attempted to molest or intimidate any employee of appellant or to damage any of appellant's property.

Under the law and the decisions of this court, the evidence discloses nothing which would have justified the trial court in restraining any of the activities of respondent unions or their members, of which appellant complains.

The judgment appealed from is accordingly affirmed.

STEINERT, C. J., TOLMAN, HOLCOMB, and ROBINSON, JJ., concur.