[No. 27553. *En Banc.* September 27, 1939.]

THE CITY OF YAKIMA, *Respondent,* v. JAY GORHAM, *Appellant.*[1]

*Vanderveer & Bassett* and *Houghton, Cluck & Coughlin,* for appellant.

*Harry L. Olson,* for respondent.

BLAKE, C. J.—The defendant was charged with, and convicted of, the violation of section one of ordinance B-301 of the city of Yakima, which provides:

"It shall be unlawful for any person to walk back and forth, loiter or remain upon the streets, alleys or sidewalks in front of any business house or industrial plant in the city of Yakima, Washington, or at or in close proximity to the rear or side entrances of such place of business or walk around such place of business or industrial plant for the purpose of persuading or intimidating any person from entering said place of business for the purpose of transacting business there-

[1]Reported in 94 P. (2d) 180.

in; provided however, that this section shall not apply to employees who have been employed three months or more at said place of business, and who have been so employed within sixty days of the period in which the acts herein referred to shall be done."

The facts out of which the charge arose are as follows: The Lindeman Power Equipment Company is engaged in retailing and manufacturing farm machinery and equipment. Its place of business is located on south Third street between La Salle and Rainier avenues, in the city of Yakima.

Prior to June 9, 1936, the company had in its employ some eleven men belonging to Machinists' Local No. 1531—a union affiliated with the American Federation of Labor. On or about that day, "Mr. Lindeman made the rule that no member of the Union could work for him and discharged the two he was familiar with as being members, . . ." The others went out on strike. The company was put on the unfair list by the Yakima Central Labor Council and the Washington State Federation of Labor. Subsequently, the National Labor Relations Board, through the Regional Board, took jurisdiction of the controversy and ruled in favor of the discharged and striking employees. In the meantime, on April 28, 1938, the city of Yakima adopted ordinance No. B-301.

On September 7, 1938, appellant was arrested while patrolling on the sidewalk in front of the premises of the Lindeman company. He accosted no one. He created no disturbance. He simply had slung over his shoulders a "sandwich sign," which bore the inscription:

"LINDEMAN
Power & Equipment Co.
UNFAIR
to
ORGANIZED
LABOR"

Appellant was a member of Machinists' Local No. 1531, but had never been in the employ of the Lindeman company.

■ From this brief summary of the facts, it is apparent that the question for determination on the appeal is whether the city of Yakima may, under its police power, prohibit "peaceful picketing" and "peaceable persuasion" by workers during the course of labor disputes. For there is no doubt that appellant, in picketing the Lindeman place of business, was violating the ordinance.

We think the question must be answered in the negative, for the reason that, in terms and purposes, the ordinance conflicts with the public policy of this state as declared by the legislature in Laws of 1933, Ex. Ses., chapter 7, p. 10, Rem. Rev. Stat. (Sup.), §§ 7612-1 to 7612-15 [P. C. §§ 3467-21 to 3467-35], inclusive. That act has been characterized as the state "Norris-La Guardia act," inasmuch as it is identical in terms with the act of Congress known by that appellation. 29 U. S. C. A. (Sup.), § 101 *et seq.*

It is elementary that the police power of municipalities derives from the state, and can be exercised only in conformity with general laws and the public policy of the state, as declared by the legislature. Const. Art. XI, § 11; *Seattle Electric Co. v. Seattle,* 78 Wash. 203, 138 Pac. 892; *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D, 78, L. R. A. 1915C, 287. In the latter case, the court said:

"Where the state, . . . asserted its jurisdiction over a given subject-matter, . . . the municipal charter or ordinance must give way."

■ Now, in § 2 of our Norris-LaGuardia act, p. 10, the legislature declared the public policy of this state in the following terms:

"WHEREAS, Under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protections; therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the State of Washington are hereby enacted." Rem. Rev. Stat. (Sup.), § 7612-2 [P. C. § 3467-22].

Section 4 (e), p. 12, provides:

"No court of the State of Washington shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute or prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts: . . .

"Giving publicity to the existence of, or the facts involved in, any labor dispute, *whether by advertising, speaking, patrolling,* or by any other method not involving fraud or violence; . . ." (Italics ours.) Rem. Rev. Stat. (Sup.), § 7612-4 [P. C. § 3467-24].

Section 13, p. 17, provides:

"When used in this act, and for the purpose of this act— . . .

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of per-

sons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee."* (Italics ours.) Rem. Rev. Stat. (Sup.), § 7612-13 [P. C. § 3467-33].

If the foregoing legislative declarations of the public policy of the state be valid, it would hardly seem that the invalidity of ordinance No. B-301 is debatable. For it would be difficult to find two enactments of legislative bodies so directly opposite in purpose and terms as these.

And, as we understand respondent's position, it seeks to sustain the validity of the ordinance on the theory of the invalidity of the act of the legislature. This, respondent endeavors to establish by an argument based on a line of decisions in which this court has held picketing, peaceful or otherwise, to be unlawful. *Jensen v. Cooks' & Waiters' Union,* 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302; *St.Germain v. Bakery & Confectionery Workers' Union,* 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824; *Baasch v. Cooks Union, Local No. 33,* 99 Wash. 378, 169 Pac. 843; *Danz v. American Federation of Musicians,* 133 Wash. 186, 233 Pac. 630.

All these cases antedate the enactment of Laws of 1933, Ex. Ses., chapter 7. Therefore, they cannot, in the light of that act, be considered as authority upon the problem which now confronts us. And, in passing, it is to be noted that, prior to the passage of that act, the court had recognized the right of "peaceful picketing" under certain conditions. *Adams v. Local No. 400 of Cooks etc.,* 124 Wash. 564, 215 Pac. 19; *Sterling Chain Theaters v. Central Labor Council,* 155 Wash. 217, 283 Pac. 1081. In the former case, it was said:

"The supreme court of the United States, in the case of *American Steel Foundries v. Tri-City Central*

*Trades Council,* 257 U. S. 184, 66 L. Ed. 189, has elaborately discussed this subject of injunction in industrial disputes. It speaks with clearness of the rights and obligations of the contesting parties in such controversies, and, as a general guide, announces the following rule:

" 'Each case must turn on its own circumstances. It is a case for the flexible remedial power of a court of equity, which may try one mode of restraint, and if it fails or proves to be too drastic, may change it.' "

Since the passage of our Norris-La Guardia act, this court has sustained the right of peaceful picketing under circumstances essentially no different than those in the case at bar. *Kimbel v. Lumber & Saw Mill Workers Union,* 189 Wash. 416, 65 P. (2d) 1066. The court there said:

"As stated in the opinion of this court in the case of *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397, working men have 'the right to cease work, or to strike, or in the lawful way to call a strike and persuade others to join them.' The right of labor unions to convey to the public at large and persons specially interested information to the effect that a certain business or plant has been by labor unions declared unfair has been several times upheld."

It is true that, in that case, the picketing occurred in the woods at a logging camp, and in this it occurred on a city street. But we can conceive no difference in the fundamental right by reason of that difference in fact. Whether the right be exercised on a country road or a city street, it is necessarily qualified by the right of the traveling public. Of course, the right cannot be exercised in a manner to interfere with or obstruct traffic.

That brings us to the consideration of a case upon which respondent places much reliance: *Tacoma v. Roe,* 190 Wash. 444, 68 P. (2d) 1028. We, however, can find no analogy between that case and this in

law or in fact. The ordinance under consideration in that case was definitely an ordinance designed to control traffic. Neither in terms nor purpose was it designed to prohibit picketing. Nor was the defendant in that case engaged in picketing.

Respondent also puts much reliance upon the cases of *Safeway Stores v. Retail Clerks' Union*, 184 Wash. 322, 51 P. (2d) 372; and *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P. (2d) 397. But, as we read those cases, they are not decisive of the question raised here. True, the *Safeway Stores* case directly involved picketing, but the decision hinged upon the holding that no labor dispute existed in contemplation of the act. In the *Blanchard* case, the question of picketing was only remotely involved—if at all. In final analysis, that case simply holds that the power of the courts to grant injunctions derives from the constitution and cannot be circumscribed by legislative enactment. We find nothing in either of those cases which conflicts with a holding on the record of this case that "peaceful picketing" is lawful, and that ordinance No. B-301 is invalid because it conflicts with the public policy of the state, as declared by the legislature in Laws of 1933, Ex. Ses., chapter 7.

This conclusion is in harmony with what seems to be the unanimous opinion of courts dealing with the subject of peaceful picketing in the light of the Norris-LaGuardia act and acts identical with, or patterned after, it. *New Negro Alliance v. Sanitary Grocery Co.*, 303 U. S. 552, 82 L. Ed. 1012, 58 S. Ct. 703; *Fenske Bros. v. Upholsterers' International Union*, 358 Ill. 239, 193 N. E. 112, 97 A. L. R. 1318; *Schuster v. International Ass'n of Machinists, etc.*, 293 Ill. App. 177, 12 N. E. (2d) 50; *Local Union No. 26 etc. v. Kokomo*, 211 Ind. 72, 5 N. E. (2d) 624, 108 A. L. R. 1111; *Geo. B. Wallace Co. v. International Ass'n of Mechanics, etc.*, 155 Ore.

652, 63 P. (2d) 1090; *American Furniture Co. v. I. B. of T. C. & H. of A., Chauffeurs etc.,* 222 Wis. 338, 268 N. W. 250, 106 A. L. R. 335; *Senn v. Tile Layers Protective Union,* 222 Wis. 383, 268 N. W. 270, 872 (affirmed 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857).

The Indiana case, *Local Union No. 26 etc. v. Kokomo, supra,* is peculiarly pertinent because it is indistinguishable in its facts from the case at bar. There, as here, pending a labor dispute, the city of Kokomo passed an ordinance prohibiting picketing. The court said:

"Since the legislature, by Chapter 12, Acts 1933, has spoken in no uncertain terms upon the question of labor disputes, the city of Kokomo possesses no power to adopt an ordinance contrary to the legislative expression upon that subject, or contrary to the general policy of the state. . . .

"Part of the ordinance in question is irreconcilable and inconsistent with Chapter 12, Acts 1933, and under the foregoing authorities, and many others, cannot be sustained upon the ground that it is a valid exercise of police power. . . .

"The act of picketing is a means of 'compulsion and coercion,' but if it is exercised in a legal manner and without fraud or violence, it is lawful under the statute, yet it is the clear intention of the ordinance to prevent such acts. The overt act of assembling and congregating for concerted action in a peaceable, lawful manner is made punishable by the ordinance. The ordinance is repugnant to the declared purpose and object of the statute."

In so far as ordinance No. B-301 conflicts with the public policy of the state as declared by the legislature in Laws of 1933, Ex. Ses., chapter 7, Rem. Rev. Stat. (Sup.), §§ 7612-1 to 7612-15, it is invalid.

The judgment is reversed, and the cause remanded with directions to dismiss.

MILLARD, GERAGHTY, JEFFERS, SIMPSON, BEALS, and ROBINSON, JJ., concur.

MAIN, J. (dissenting)—I recognize that the statute expressly gives the right of "patrolling," and declares the public policy of the state. The statute, however, does not cover the matter of the time, place, or manner of patrolling. To give the right to patrol is one thing, and to regulate the manner and the time and place where it may be done is something else. I do not believe that the legislature intended that the word should be given a meaning so broad as to deprive a city or town of the right to regulate the use of its streets and sidewalks, or to deprive a business house of the right to protect its business if the picketing was destroying it, even though there was nothing that could be said to amount to either fraud or violence. It is a well-known fact that businesses of a certain type can effectually be ruined by picketing in close proximity to the entrance of the business house, and in such numbers as to practically destroy the business.

It is probably correct to say that, in the ordinance, there are one or more provisions which cannot be sustained; but it is not necessary, in view of the theory upon which the majority opinion is written, to go into these at this time.

For the reasons indicated, I dissent.

STEINERT, J. (dissenting)—For the reasons given by Judge Main and, further, upon the ground that the opinion is inconsistent with our holdings in *Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372, and cases following it, concerning the limitations upon the right to picket, I dissent.