[No. 27978. Department Two. September 6, 1940.]

MARVEL BAKING COMPANY, *Respondent*, v. TEAMSTERS' UNION LOCAL NO. 524 *et al., Appellants.*[1]

[1]Reported in 105 P. (2d) 46.

*J. P. Tonkoff* and *Vanderveer, Bassett & Geisness,* for appellants.

*George C. Twohy,* for respondent.

BEALS, J.—July 26, 1939, Marvel Baking Company, a Washington corporation, doing business in the city of Yakima, instituted this action against Teamsters' Union Local No. 524 (an unincorporated association) and certain officers and members of the union, praying for damages and for an order restraining the defendant union and its members from interfering with plaintiff's business.

In its complaint, plaintiff alleged its corporate existence, and that it was conducting a baking business under state license in the city of Yakima; that all its employees in its bakery belonged to the bakers' local union (it is not disputed that all its truck drivers belonged to defendant union), and that between plaintiff and its employees there was no pending dispute over wages; that the defendant union and its members were made up of teamsters, truck drivers, and deliverymen, operating in the city of Yakima, and that the individual defendants were its officers and agents; that Paddy Kake Bakery Sales Company (hereinafter referred to as Paddy Kake), a Washington corporation, was a customer of plaintiff, purchasing approximately one-half of plaintiff's products; that for some time prior to the institution of this action, the officers of defendant union, on behalf of the union, stated to the president of plaintiff that plaintiff must cease to sell to Paddy Kake, under penalty of refusal of the union teamsters to deliver plaintiff's products and the placing of a picket line at plaintiff's place of business; that, upon plaintiff's refusal to discontinue its business with Paddy Kake, the union teamsters did refuse to deliver its products, whereupon defendants parked an auto-

mobile in front of plaintiff's establishment, bearing signs advising the public that plaintiff was unfair to defendant local and the American Federation of Labor.

Plaintiff further alleged that the acts of defendants constituted a secondary boycott against plaintiff; that, because of the acts of defendants, plaintiff's employees were and would be unable to continue their employment with plaintiff. Plaintiff alleged damage to its business, and asked for judgment for such damages and for continuing damage, for a temporary restraining order, and for a permanent injunction upon trial.

By amended answer and cross-complaint, defendants pleaded affirmatively the existence of Local 524 as a local union, under the jurisdiction of the International Brotherhood of Teamsters, Chauffeurs and Helpers of America; that plaintiff's bakers and truck drivers were members either of the bakers' union or of the defendant union, and had been employed by plaintiff pursuant to contracts, copies of which were attached to the answer. By the contract between plaintiff and the union, which plaintiff admits was entered into, plaintiff agreed to hire only members in good standing of defendant union, and agreed to certain hours of labor and wages, the contract containing the following:

"There shall be no goods delivered to or sold at the plant for resale from trucks to persons not in good standing with Local Union No. 524."

Manifestly, this portion of the contract was desired by the union for the purpose of providing more positions for its members, or protecting them in positions which they already filled.

During the course of the litigation, it was admitted that the contract between the parties pleaded by defendants was at all times in effect; that Paddy Kake was not in good standing with defendant local, as it employed nonunion truck drivers; and that plaintiff

sold substantial quantities of its products at its plant to Paddy Kake for resale from trucks, it thereby appearing that the contract above quoted had been breached by plaintiff. The trial court so found, and this fact is not disputed.

By way of a cross-complaint, defendants pleaded that plaintiff had violated its contract in certain particulars mentioned, and asked for damages against plaintiff and for a decree restraining plaintiff from further violating its contract with defendants.

Apparently, another union was at one time concerned with the litigation, but such union was not referred to in the final decree which was entered, and is not a party to this appeal.

The action was tried to the court, and resulted in a decree permanently restraining and enjoining defendant union, its officers and employees, from directly or indirectly interfering with plaintiff's business, from picketing or boycotting the same, and from interfering with deliveries of supplies used by plaintiff in its business, or with the sale or delivery of plaintiff's products. Plaintiff was also granted judgment against defendants for different elements of damage, amounting in all to $564. From this decree, defendants have appealed.

Error is assigned upon the issuance of the injunction against appellants, restraining them from advising members of the union and the public at large of the fact that appellants deemed respondent unfair to appellant union and the American Federation of Labor. Error is also assigned upon the award of damages against appellants; upon the dismissal of appellants' cross-complaint; and upon the refusal of the trial court to award appellants damages.

Several of respondent's employees, who were members of appellant union, testified that they were satisfied with their wages and working conditions, but that

they struck because they were instructed by the union so to do.

It appears from the evidence that Paddy Kake had been purchasing and receiving merchandise from respondent for some time prior to the date of the contract between respondent and appellant union; that respondent's president and officers knew that Paddy Kake was not in good standing with the union; that this phase of the discussion between the parties was carefully considered at the time of the execution of the contract; and that § 5 of the contract above quoted was, to the knowledge of both parties, considered in connection with sales from respondent to Paddy Kake.

The trial court correctly ruled that the contract between respondent and appellant union had been breached by the former's delivery of merchandise to nonunion drivers. Nevertheless the trial court was of the opinion that the controversy between the parties to this action did not present any question amounting in law to a labor dispute, and that respondent was entitled to the injunction which was later embodied in the decree from which this appeal is prosecuted.

The strike was called when respondent refused to cease selling to Paddy Kake, the latter's employees not having become members of the union. Respondent's deliverymen then quit work, and the picketing of which respondent complains herein was commenced by parking an automobile in front of respondent's bakery, the machine bearing a sign stating that respondent was unfair to the teamsters' union and the American Federation of Labor. Respondent's bakers, being members of another union affiliated with the American Federation of Labor, also ceased work, and respondent had much difficulty in conducting its bakery and delivery business.

Appellants argue that the controversy between the

parties constitutes a labor dispute, within the meaning of the statute; and that, in any event, appellants had the right to conduct peaceful picketing at or near respondent's plant, and to advise the public of the fact that respondent was regarded as unfair to the union.

Rem. Rev. Stat. (Sup.), § 7612-13 [P. C. § 3467-33], reads as follows:

"When used in this act, and for the purpose of this act—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or association of employers; or (3) between one or more employees or association of employees and one or more employees or association of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which dispute occurs, or has a direct or indirect interest therein or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment,

regardless of whether or not the disputants stand in the proximate relation of employer and employee." Laws of 1933, Ex. Ses., chapter 7, p. 17, § 13.

Respondent's truck drivers were all members of appellant union and were hired by respondent pursuant to the contract above referred to, entered into between respondent and the union. The contract sets forth many terms and conditions affecting the employment of the drivers, one condition being that above quoted, contained in paragraph 5.

██ The dispute which arose between the parties to this action by reason of the fact that respondent refused to cease selling its merchandise to Paddy Kake, constituted a labor dispute, under the law and the contract between the parties hereto. The statute above quoted, defining a labor dispute as any controversy concerning terms or conditions of employment "regardless of whether or not the disputants stand in the proximate relation of employer and employee," applies to the facts of the case at bar.

There can be no question but that, under the authority of several decisions, with some of which certain of our opinions are not in accord, the controversy here in question would be classed as a labor dispute. *Senn v. Tile Layers Protective Union*, 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857; *Lauf v. E. G. Shinner & Co.*, 303 U. S. 323, 82 L. Ed. 872, 58 S. Ct. 578; *New Negro Alliance v. Sanitary Grocery Co.*, 303 U. S. 552, 82 L. Ed. 1012, 58 S. Ct. 703; *Grace Co. v. Williams*, 96 F. (2d) 478; *Schuster v. International Ass'n of Machinists etc.*, 293 Ill. App. 177, 12 N. E. (2d) 50; annotations in 97 A. L. R. 1334, 106 A. L. R. 361, 120 A. L. R. 316.

The trial court was of the opinion that, following the case of *Fornili v. Auto Mechanics' Union etc.*, 200 Wash. 283, 93 P. (2d) 422, no labor dispute was pre-

sented in the case at bar. In the case cited, it appeared that the plaintiff was conducting an automobile repair shop, and was also selling used automobiles, oil and gasoline. During the year 1936, plaintiff's shop was picketed by the the auto mechanics' union, with the result that plaintiff and the union entered into a written contract, the plaintiff agreeing to employ only union men for the period of one year. Later, this contract was renewed for the year 1937. Some disputes arose during the term of the contract; and after its expiration, June, 1938, no attempt was made to renew the agreement between the parties, and thereafter the plaintiff employed nonunion men. No dispute arose between plaintiff and his employees, but nevertheless the defendant union proceeded to picket plaintiff's establishment. On the authority of *Safeway Stores v. Retail Clerks' Union etc.,* 184 Wash. 322, 51 P. (2d) 372, and *Adams v. Building Service Employees etc. Union,* 197 Wash. 242, 84 P. (2d) 1021, this court held that there was no labor dispute between Fornili and his employees or the union, and directed that the union be permanently enjoined from picketing Fornili's shop.

The *Fornili* case and decisions of this court upon which the same was based hold that no labor dispute exists in cases where a union pickets an employer, when none of the employees belongs to the union which is engaged in the picketing, and when no employee has any dispute with his employer as to the terms and conditions of his employment. In none of our cases above cited did it appear that the employer had an existing contract of any kind with the union, and consequently could be charged with violation of any agreement.

In the case at bar, all of respondent's employees were members either of appellant union or of the bakery

workers' union, and the contract defining the terms and conditions of employment of respondent's union employees was in full force and effect, and admittedly was being violated by respondent.

In the recent case of *Yakima v. Gorham,* 200 Wash. 564, 94 P. (2d) 180, the defendant was convicted of violating an ordinance of the city of Yakima, prohibiting picketing by persons who for three months or more had not been employed at the place of business picketed. On appeal, this court held void the city ordinance prohibiting picketing, in so far as the same was in conflict with the labor disputes statute (Rem. Rev. Stat. (Sup.), § 7612-1 [P. C. § 3467-21] *et seq.,* Laws of 1933, Ex. Ses., chapter 7, p. 10).

In the case at bar, we are convinced that the controversy between the parties arose out of a labor dispute, that the picketing by appellants of respondent's establishment, being peaceful and nowise disorderly, was not unlawful, and that the trial court erred in entering the decree appealed from.

In the case of *Kimbel v. Lumber & Saw Mill Workers Union,* 189 Wash. 416, 65 P. (2d) 1066, it was held that the peaceful picketing referred to in the opinion was not unlawful, and should not be enjoined. It appeared that several of the employees belonged to the union. In the course of the opinion, we said:

"Under the law, workmen have the right to organize and form unions. . . .

"The right of labor unions to convey to the public at large and persons specially interested information to the effect that a certain business or plant has been by labor unions declared unfair has been several times upheld. . . .

"Under the law and the decisions of this court, the evidence discloses nothing which would have justified the trial court in restraining any of the activities of respondent unions or their members, of which appellant complains."

In the case at bar, respondent's employees were union men, and the breach of respondent's contract with appellant union being admitted, it would seem that the union had the right to "convey to the public at large and persons specially interested information to the effect that" respondent employer had been by the union declared unfair.

In the *Fornili* case, this court referred to the *Kimbel* case, distinguishing the earlier decision for the reason that the *Kimbel* case involved the picketing of a logging camp, and not of a store in which goods were sold on the premises. The case of *Yakima v. Gorham, supra,* however, involved the picketing of a store in the city of Yakima, and this court, in reversing the judgment of the superior court, cited the *Kimbel* case, saying:

"It is true that, in that case, the picketing occurred in the woods at a logging camp, and in this it occurred on a city street. But we can conceive no difference in the fundamental right by reason of that difference in fact."

■ Respondent contends that appellants' actions constituted a secondary boycott, and that such an act has been by this court declared to be unlawful, citing *Pacific Typesetting Co. v. International Typographical Union,* 125 Wash. 273, 216 Pac. 358, 32 A. L. R. 767, and *United Union Brewing Co. v. Beck,* 200 Wash. 474, 93 P. (2d) 772. In the earlier decision, this court approved the doctrine that one not a party to an industrial dispute "cannot against his will be made an ally of either one of the parties for the purpose of accomplishing the destruction of the other." In the *United Union Brewing Co.* case, another situation was referred to, which it was held constituted a secondary boycott, it appearing that the unions' dispute was with the manufacturer, and that, to harass him, the unions pick-

eted purchasers and consumers of his product, who were not parties to the original dispute.

In the case at bar, it does not appear that appellants ever threatened or harassed any of respondent's customers, or any person selling goods to respondent, appellants' activities having been limited to peaceful picketing of respondent's bakery and the resulting dissemination of information of appellants' opinion concerning respondent's action.

No question concerning any unlawful use of the street in front of respondent's establishment, or of any blocking of ingress or egress to or from respondent's place of business, is here presented.

In the case of *Safeway Stores v. Retail Clerks' Union etc., supra,* which was an action to enjoin the defendant union from picketing plaintiff's establishment, it appeared that none of plaintiff's employees belonged to the union, and it did not appear that any one of them was dissatisfied with wages or hours of labor. It was held that the union had no right to picket plaintiff's store, there being no labor dispute involved.

In the case of *Adams v. Building Service Employees etc. Union, supra,* it appeared that the plaintiff, a nurseryman, employed seven men, none of whom belonged to any union. The defendant union attempted, without success, to unionize plaintiff's employees, whereupon the defendant picketed the nursery. Some of the methods employed by the pickets were highly objectionable. In an action by Adams to enjoin the picketing, this court held that there was no labor dispute involved, and that the picketing was unlawful.

In the *Fornili* case and the two cases last discussed, upon which the opinion in the *Fornili* case was based, this court held that no labor dispute is involved in a controversy between a union and an employer, when none of the employees belongs to the picketing union,

and where there is no dispute between the employer and any employee concerning wages, hours of labor, or working conditions. In none of the cases cited did it appear that the employer had any existing contract or agreement with any union. On the facts, the cases cited differ decidedly from those presented in the case at bar.

In the recent case of *Yakima v. Gorham, supra,* it appeared that the employer refused to employ any member of the union and discharged two employees who were union men. His other employees then struck, and this court, in effect, held that, under the circumstances shown, a labor dispute existed, and that orderly picketing of the employer's place of business was lawful.

In the recent case of *United Union Brewing Co. v. Beck, supra,* referring to primary and secondary boycotts, this court said:

"While the term 'secondary boycott' is of somewhat vague signification and has no precise and exclusive denotation, the courts, both Federal and state, are agreed that any combination will be held to be a secondary boycott if its purpose and effect are to coerce customers or patrons, through fear of loss or bodily harm, to withhold or withdraw their business relations from the employer who is under attack,"

and quoted the following language from the case of *Booker & Kinnaird v. Louisville Board of Fire Underwriters,* 188 Ky. 771, 224 S. W. 451, 21 A. L. R. 531:

" 'The law recognizes what may be called two species of boycotts. One a primary boycott that is applied directly and alone to the offending person, by withdrawing from him all business relations on the part of the organization that initiated the boycott, and the other a secondary boycott that becomes effective when the members of the organization refuse to have any business relations with persons dealing with the of-

fender until he has yielded to the demands of the organization,' "

and also from the case of *Ellis v. Journeymen Barbers' International Union*, 194 Iowa 1179, 191 N. W. 111, 32 A. L. R. 756:

" 'The purpose of a *secondary* boycott is to bring to bear a duress upon the customers of the person under attack, by threatening them directly or indirectly with a boycott, if they persist in trading with such person.' "

The record discloses no secondary boycott against respondent. Neither does the record show that appellants attempted to intimidate any of respondent's officers, employees, or customers, and no slander or libel on the part of appellants is shown.

The parties had the right to enter into the contract which they executed, and which by its terms was still in effect up to and including the time of the trial of this action. Respondent does not contend that, at the time the contract was signed, it did not fully understand the meaning of the clause of the contract above quoted. Respondent having breached this provision of its contract, appellants had the right, by lawful methods, to disseminate information to the effect that a dispute existed between respondent and appellant union. The facts that respondent's employees were all members of the union, and that the parties to this action had entered into a contract which was in full force and effect at the time the action was commenced and when the action was tried, distinguish this case from the *Fornili* case and other of our decisions relied upon by respondent.

The record does not support any award of damages in appellants' favor and against respondent. The evidence discloses no basis for any award of damages in respondent's favor; and, it not appearing that the decree appealed from enjoins the further commission of

any unlawful acts which appellants had committed, the decree is reversed, with instructions to the trial court to dismiss the action.

BLAKE, C. J., JEFFERS, DRIVER, and STEINERT, JJ., concur.