## MYER J. LICHTERMAN v. LAUNDRY & DRY CLEANING DRIVERS UNION, LOCAL NO. 131, AND OTHERS.[1]

No. 31,776.

December 9, 1938.

*John P. Devaney* and *Thomas O. Kachelmacher,* for appellants.
*Jacob Garon,* for respondent.

STONE, JUSTICE.

Defendant Laundry and Dry Cleaning Drivers Union, Local No. 131, and the individual defendants, who are certain of its officers and members, appeal from a judgment enjoining them from picketing and related activities.

Plaintiff is in the cleaning and dyeing business in Minneapolis. The issue is not directly between him and his employes, but wholly between him and defendant union, of which most, if not all, of plaintiff's drivers are members.

Both legal and factual background for the controversy is L. 1937, c. 116 (3 Mason Minn. St. 1938 Supp. §§ 3976-37 to 3976-49), prohibiting, under penalty for disobedience, "unlawful discrimination in the production, manufacture or distribution of certain commodities, articles, goods, wares and merchandise" and "unfair competi-

[1]Reported in 282 N. W. 689, 283 N. W. 752.

tive trade practices." It is referred to as our "Unfair Trade Practices Act."

Pursuant to that law, the Minneapolis Cleaners & Launderers Association, Inc., of which plaintiff is a member, made a cost survey in the local field of their industry and thereon published a schedule of prices. Plaintiff, not wanting to be bound by either survey or prices, proposed to put into effect a lower schedule.

Thereupon defendant union threatened to picket plaintiff's place of business and actually did some picketing. As to the manner of (rather than the occasion for) the picketing, threatened or actual, there is no complaint that it was unlawful.

Plaintiff moved to strike defendants' answer as sham and frivolous. Thereupon the parties stipulated that (plaintiff having withdrawn his claim for damages) the court should decide the case finally on the motion to strike and the showing by affidavits for and against. By that stipulation it was agreed that if the case did not present a labor dispute as defined by L. 1933, c. 416, § 12 (3 Mason Minn. St. 1938. Supp. § 4260-12), plaintiff should have judgment for an injunction; but that if such a labor dispute was presented defendants should prevail. The decision and resulting judgment went for plaintiff. To defendants' credit, be it said, the judgment has been obeyed. Their rights are being enforced by the methods of law and order rather than by those of illegality and disorder.

Many of plaintiff's employes, and all his drivers, work for a minimum wage, plus a commission on business procured by them. Hence their compensation goes up and down with the prices plaintiff charges his customers.

The term "labor dispute" as defined by L. 1933, c. 416, § 12(c), includes "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." Section 12 also declares:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; * * * whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; * * * or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation."

Applying these declarations to the inescapable facts of this case, we consider that a labor dispute is plainly presented.

By the Unfair Trade Practices Act of 1937 both common-law and former statutory concepts of unlawful restraint of trade are modified. That statute recognizes that there is such a thing as too much competition and aims to restrain it in the manner and to the extent indicated. The economic reaction upon its labor of ruinous or excessive competition in a given trade or industry is obvious.

The instant case involves "persons who are engaged in the same occupation." The issue is one in which plaintiff's direct interest is plain. That being true, how can it be said that local labor in the industry lacks a similar direct interest? It is enough under the statute that the parties have an indirect interest. On that ground we hold that the issue is a "labor dispute" within the meaning of the statute.

This being so clearly a case which both as to parties and subject matter involves "conflicting * * * interests in a 'labor dispute,'" little more need be said. By the very terms of the statute it is not determinative that the issue of the moment is not between an employer and his own employes. American Furniture Co. v. I. B. of

T. C. & H. of A. 222 Wis. 338, 268 N. W. 250, 106 A. L. R. 335; Senn v. Tile Layers Protective Union, 222 Wis. 383, 268 N. W. 270, 872; Lauf v. E. G. Shinner & Co. 303 U. S. 323, 58 S. Ct. 578, 82 L. ed. 872; see also McClintock, "Minnesota Labor Disputes Injunction Act," 21 Minn. L. Rev. 619, 635; Note, 21 Minn. L. Rev. 467.

The decision below seems to have been controlled by the idea that defendants have no right to dictate to plaintiff what charges to make against his customers. That is true, but it does not reach the proposition that the members of defendant union, whom it lawfully represents, have a manifest interest in opposing a manner of doing business, or any charges therein, which threaten their own security as to status or wages. *Cf.* New Negro Alliance v. Sanitary Grocery Co. 303 U. S. 552, 58 S. Ct. 703, 82 L. ed. 1012, where defendant organization had no right to dictate to plaintiff that plaintiff's employes should be negroes. But defendant was held to be within the protection of law in resorting to peaceful picketing to prevent discrimination against negroes. That racial issues were involved did not remove or lessen the determinative effect of the "labor dispute" found to be present.

Employers have the same right to organize as employes. Here we have evidence of the activities on the one side of an employers' and on the other of an employes' organization. Modern labor laws are intended as aids to a greater degree of economic security and social order. The Unfair Trade Practices Act of 1937 has a similar general purpose. In proportion as federations of employes and employers mutually recognize, respectfully and ungrudgingly, the rights of each other, will they advance the interests of industrial democracy. Thereby they will serve their own members and the public in maintaining that degree of "social discipline" which should be the goal of both. That function is said to be well performed by such associations in Sweden. See Robbins & Heckscher, "Collective Bargaining in Sweden," 24 American Bar Assn. Journal, p. 926. Such achievements of democratic processes will be insurmountable obstacles to totalitarianism of any kind.

Inasmuch as the case presents a labor dispute, the judgment must be and is reversed.

UPON APPLICATION FOR REARGUMENT.

On February 10, 1939, the following opinion was filed:

STONE, JUSTICE.

Plaintiff's petition for rehearing charges us with misconstruction of facts in a manner detrimental to him. Counsel frankly and properly shares responsibility for some of the errors. We now add to the statement of facts appearing from the opinion the following, taken from plaintiff's brief:

"Further, it [complaint] alleged that he [plaintiff] was party to a subsisting contract with the union, covering his business and employees. The contract contained no provision for prices to be charged the public, his customers. It alleged also that on or about June 1, 1937, defendant unions picketed plaintiff's place of business upon his refusal to revise prices to be charged the public in accordance with a scale of such prices submitted by the union. The picketing was thereafter resumed until a temporary injunction was issued. The affidavits of plaintiff and his employees supporting all of the allegations in the complaint were nowhere traversed.

"The answer of defendant-appellant, although containing a pro forma general denial, set up specific denials and explanations to meet the allegations in plaintiff's complaint, and in substance admits the picketing, and claims the right so to picket by virtue of an alleged, although unadjudicated, violation of the Unfair Trade Practice Act, Chapter 116, Session Laws of 1937."

The facts as stated by counsel for plaintiff in his own brief show the presence of a "labor dispute."

Some of the misconception appearing from the petition for rehearing is due to an attempt to escape the stipulation entered into below. That stipulation is controlling, and so narrows the issue that no constitutional question was presented. Our construction of that stipulation was inaccurate, but not so as to affect the result. It eliminated all issues—

"except those raised by the allegations in the answer relating to the Unfair Trade Practice Act, said act being Chapter 116, Minnesota Session Laws for 1937, and prices charged by plaintiff."

It further declared that the party prevailing on the motion to strike defendants' answer should be entitled to judgment.

There was no reply to the answer. The affidavits presented on the motion to strike plus the answer plainly show the presence of a "labor dispute" as defined by L. 1933, c. 416. Had that controversy been properly tried to conclusion on the merits, defendants might or might not have been worsted. That does not alter the character of the issue. The one here was a "labor dispute." Because there was such a dispute, no injunction could properly issue otherwise than pursuant to L. 1933, c. 416.

We referred to the Unfair Trade Practices Act simply as one of the facts in the case. It is not controlling one way or the other, and nothing we have said is to be taken as touching even remotely any question that may arise concerning its constitutionality or construction.

There is much and complaining argument about the extent to which labor unions may dictate the management of business by its owners. That goes to the policy of statutory law, which we have no right to review except as it transgresses constitutional limitations, none of which are factors of present decision.

The petition for rehearing is denied.