28619. HUIET, commissioner, *v.* BOYD *et al.*

DECIDED MARCH 21, 1941.

*Clifford Walker, Otis L. Hathcock,* for plaintiff in error.
*Hardin & McCamy, H. W. McLarty, A. L. Henson,* contra.

STEPHENS, P. J.   On April 1, 1940, Opal Laverne Boyd and twelve other named parties filed in the superior court of Whitfield County a petition against Ben T. Huiet as commissioner of the Department of Labor of Georgia, and against the Crown Cotton Mills, to review, pursuant to the provisions of section 6(i) of the unemployment compensation law, supra, a decision of the board of review provided in such law, which decision involved their right to unemployment compensation benefits under that law, their last employment being with the Crown Cotton Mills.   The decision of the board of review was rendered upon an appeal from the decision of the appeals tribunal established under the unemployment compensation law, to which tribunal claimants had appealed from the ruling of the commissioner denying their claims for unemployment benefits.   The petitioners contended that their unemployment was not due to the stoppage of work which existed because of a labor dispute at the factory at which they worked in which they were involved directly or indirectly, or in which they were participating or financing, but resulted because they were prevented from entrance to their work on account of imminent danger of personal violence at the hands of pickets; that the direct cause of the stoppage of their work was actual force, violence, and duress exercised by persons forming a picket line, and that these persons prevented their entrance to the factory, and therefore prevented them from working.   The claimants contended that they did not belong to the grade or class of workers of which, immediately before the commencement of the stoppage of work, there were members employed at the premises at which the stoppage occurred, any of whom were participating in or were financing or were directly interested in the dispute, and that there were only two grades or classes of workers at the mill immediately before the commencement of the stoppage of work, and these two grades or classes were (1) those who called or consented to the strike, and (2) those who discouraged the strike and wanted to continue their work.   It appeared from the petition that the appeals tribunal heard evidence on the claim of the petitioners for unemployment compensation and denied compensation.   The petitioners appealed to the board of review, which board heard additional evidence in the matter and

affirmed the ruling of the appeals tribunal and denied compensation to the claimants. From this decision the claimants appealed by the statutory method prescribed, by bringing this suit in the superior court of Whitfield County against the commission and against Crown Cotton Mills. The judge of the superior court, under the authority of the unemployment compensation act, reversed the finding of the board of review, and ordered unemployment compensation paid to the claimants. The labor commissioner and Crown Cotton Mills excepted.

Under the unemployment compensation law of this State an unemployed person ·is not entitled to the compensation benefits provided for therein, and is disqualified from receiving such benefits, "(d) For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory . . at which he is or was last employed; provided that this sub-section shall not apply if it is shown to the satisfaction of the Commissioner that (1) he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and (2) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute." Ga. L. 1937, pp. 806, 813. Code Supplement, § 54-610.

The board of review found that the unemployment of the claimants was occasioned as the result of a stoppage in work brought about by a labor dispute between the mill and its employees. The claimants contended, however, that their unemployment was not occasioned as the result of a labor dispute, but by being prevented from going to their work by threats of personal violence on the part of some of the employees of the mill who were participating in the strike and who had formed picket lines about the mill. The evidence was sufficient to authorize the finding by the board of review that the stoppage of the claimants' work was due to a labor dispute at the factory at which they worked. As the board of review was the trior of the facts, this finding was binding on the courts. See section 6(i) of the act. Therefore the claimants are not entitled to unemployment compensation unless it appears as a

matter of law from the undisputed evidence that they were "not participating in or financing or directly interested in the labor dispute which caused the stoppage of work," and that they did not "belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute." The board of review held that the claimants were disqualified from receiving unemployment benefits because it did not appear that they were not directly interested in the labor dispute which caused the stoppage of work, but that it did appear that if the strike had been successful, their wages would not have been reduced, but the result would have been a general increase of wages and the claimants would have benefited, and that they were directly interested in the dispute which caused the stoppage of the work at the establishment where they were employed, and they were "disqualified for benefits."

In its judgment, which was in effect a reversal of the board of review, the superior court held that the judgment of the board was without evidence to support it, in that it appeared without dispute from the evidence that the claimants did not participate in or finance or were directly interested in the labor dispute which caused the stoppage of the work, and that they did not belong to the grade or class of workers referred to in section 5(d2), of the act quoted above. The judgment of reversal is in the bill of exceptions brought to this court by the respondents, B. T. Huiet, as commissioner of the department of labor, and Crown Cotton Mills, and is excepted to only on the ground that the court erred in reversing the judgment of the board of review on the grounds on which the court predicated its judgment as above indicated. There is presented no question as to whether the unemployment of the claimants was caused by the stoppage of the work because of the strike or labor dispute at the factory at which they were employed. The board of review found this to be a fact, and the judge of the superior court ruled that the evidence was sufficient to authorize the board of review to make this finding. The evidence clearly authorized the board to so find.

As provided in the act, the claimants are disqualified to receive unemployment compensation as provided for in the act, for unem-

ployment due to the stoppage of the work because of a labor dispute at the factory, unless they did not participate in, or finance, or were not directly interested in, the labor dispute which caused the stoppage of work, and unless they did not belong to the grade or class of workers who, immediately before the commencement of the stoppage of the work, were employed on the premises, and some of them participated in or financed the dispute or were directly interested in it.

There seem to be available very few judicial decisions on the questions here presented. This act is a standard act. There is an abundance of rulings on these questions by administrative boards charged with the administration of similar acts in various jurisdictions. Many of these rulings are brought to our attention in the brief of counsel for the plaintiff in error. They are to the effect that where the stoppage of the work is caused by a labor dispute, any employee or class of employees whose wages are involved in the dispute, and would be affected by the result of the dispute, is directly interested in the dispute; and an employee so directly interested in the dispute, or who belongs to a grade or class of workers which, immediately before the commencement of the stoppage of the work, consisted of members employed on the premises at which the stoppage occurred, any of whom were so directly interested in the dispute, is disqualified from receiving the benefits for unemployment provided in the act.

An administrative tribunal under the British unemployment compensation act, which is in terms practically identical with the Georgia act, has ruled that "An individual is held to be directly interested in a dispute when his wages, hours, or conditions of work will be affected favorably or adversely by the outcome." See Unemployment Compensation Interpretation Service, Benefit Series, General Supplement No. 1, pp. 31, 32. In the same report appeared the following case: The claimant was an underground fireman employed in an underground oil industry in Scotland, and lost his employment as the result of the miners' dispute. He was not a member of the miners' union, and did not participate in the ballot which resulted in the strike. His claim for compensation was disallowed, and it was held as follows: "The applicant does not show that he was not directly interested in the dispute. It seems that the dispute was with regard to a proposal to reduce the

district percentage by ten per cent. and the applicant's wages consisting of time-rate plus district percentage, so that a reduction in the district percentage would immediately result in reduction of his wages." Other claimants were blacksmiths employed by a firm of shipbuilders, and lost employment because of a strike of hammermen at the premises where the claimants were employed. It appeared that there existed the poundage system of apportionment of earnings between the blacksmiths and the hammermen. The hammermen struck because of a dispute with reference to revised rates proposed by the employers. It was held that the claimants were not entitled to the benefits of the act, and that although their "interest in the dispute may have been adverse to that of the hammermen who were on strike, they had a direct interest in the dispute, as it was a dispute with respect to the apportionment between themselves and the hammermen of the total amount paid for the work." Another claimant was a laborer employed in the twisting department of a cotton mill, and lost employment because of a strike by a union. After the claimant resumed employment it was determined by the management that he would not suffer a reduction in wages. It was held that the claimant was directly interested in the dispute and was not entitled to compensation benefits. There appear cited many other decisions by the British administrative authorities to the effect that an employee whose wages are affected and involved in the dispute has a direct interest in the dispute and can not receive the unemployment benefits provided for in the act.

The administrative board in Indiana has held that "A claimant is deemed to be directly interested in a labor dispute if his wages and working conditions would be affected by the result of said dispute." C. C. H. U. I. S. 17,513. This board also held that "An employee who is not a member of a union but who is a member of a unit of employees for which the striking union has been designated as the bargaining agent for such unit is deemed to be directly interested in the labor dispute since his working conditions may be affected thereby." C. C. H. U. I. S. 17,514. In Massachusetts "A foreman, who, because of his right to hire and fire, was ineligible for union membership, was paid on an hourly basis. A labor dispute took place relative to the pay of employees who worked on an hourly rate. It was held that since the foreman was

paid on an hourly basis he had a direct monetary interest in the outcome of the labor dispute and was hence disqualified for benefits." C. C. H. U. I. S. 24,039. The superior court of Pierce County, in the State of Washington, in the matter of the eligibility of persons employed at the St. Paul and Tacoma Lumber Company, held that "A claimant may establish he is not directly interested in the dispute by proving that his wages, hours, and conditions of work will not be affected favorably or adversely by the outcome of the dispute; . . considered in connection with the pending labor dispute it ['directly interested'] means a personal interest of the individual worker as distinguished from the general interest in maintaining better working conditions." C. C. H. U. I. S. 50,516. In Chrysler Corporation v. Michigan Unemployment Compensation Commission, the circuit court of Ingham County, on June 12, 1940, said: "There is no escape from the conclusion that all employees within the plants in which the strikes were called were directly involved and also directly interested. The rule is too well settled to be questioned that a labor dispute that affects the wages, hours of work, and general conditions of employment causes all employees concerned to be directly interested. It is not a contingent remedy or speculative interest, but rather must be regarded as directly within the meaning of the statute."

Our attention has been called to Kieckhefer v. Unemployment Compensation Commission, 125 N. J. L. 52 (12 Atl. 2d, 646), in which the Supreme Court of that State defined the expression "directly interested in the labor dispute which caused the stoppage of work," as contained in the act, as being limited "to those employees directly interested in its [labor dispute] furtherance by participation and activity therein," and held that an employee who would be benefited as to wages and limitation of working hours, increase of pay for overtime work, and other matters, but who had not participated in or financed the labor dispute, was not directly interested in the dispute. This decision gives no meaning whatsoever to the expression "directly interested in the labor dispute" as contained in the act, but defines it as equivalent to a participation in the dispute. The act provides that one "participating" in the dispute is disqualified from the benefits. The expression "directly interested" as used in the act, if given any meaning at all, must necessarily have a meaning different from that of "par-

ticipating" in the dispute. This ruling of the New Jersey court seems to be at variance with the general acceptance of the meaning of "directly interested" in the labor dispute by various labor boards and other tribunals cited above in this opinion.

It appears from the evidence in the present case that the strike involved the amount of wages to be paid to the employees of the Crown Cotton Mills where the claimants were employed, including the wages of the claimants themselves. It appears from the testimony of the president of the mills as follows: "All grades and classes of workers would be reduced approximately 10 per cent. or 11 per cent. They asked for an increase and a closed shop. If the strike had been successful they would have gotten the increase." The testimony of one of the claimants was to the effect that the strike involved the wages. The evidence therefore was sufficient to authorize the board of review to find that the claimants' unemployment was caused by the stoppage of work by the labor dispute, that the labor dispute in question arose over a proposed general reduction of wages of the employees, that if the strike had been successful the claimants' wages would not have been reduced, but on the contrary the result would have been a general increase of wages, and the claimants would have benefited accordingly, and that the claimants were directly interested in the labor dispute which caused the stoppage of the work at the establishment where the claimants were employed, and for this reason the claimants were disqualified for benefits.

The board further found that all the material facts as developed by the evidence were applicable to the claims of all the claimants, and held that all the claimants were disqualified and not entitled to the benefits. There is no dispute of the proposition that the evidence applies to all the claimants. It is immaterial that the claimants, whether as members of the union or not, may not have voted for or participated in the strike which caused the stoppage of the work, and may not have been in sympathy with the strike, and may have attempted to go back to work but were prevented by the pickets. Since they were directly interested in the dispute which caused the stoppage of the work and their unemployment, they were not entitled to the benefits of the act.

The superior court erred in reversing the judgment of the board of review. *Judgment reversed.* *Sutton and Felton, JJ., concur.*