NOBES *v.* UNEMPLOYMENT COMPENSATION COMMISSION.

1. Unemployment Compensation—Unions—Exclusive Bargaining Agent—Labor Dispute.

  Stoppage of work in employer's plant, which followed employer's refusal to recognize union as exclusive bargaining agent for the employees following election resulting adversely to union, was due to a labor dispute within the meaning of the unemployment compensation act where picket line established by union prevented nonunion employees from working (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

2. Same—Finding of Fact—Great Weight of Evidence—Seniority Rights—Steward System.

  Evidence supported conclusion of the appeal board of the unemployment compensation commission as affirmed by the circuit judge that the strike which prevented claimants for unemployment compensation, nonunion employees, from working involved establishment of seniority rights and a steward system for adjustment of grievances and such finding of fact may not be reversed since it was not contrary to the great weight of the evidence (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

3. Same—Labor Dispute—Direct Interest of Claimant—Success of Union in Obtaining Demands—Nonunion Employees—Eligibility for Benefits.

  The fact that union which enters into a labor dispute with its employer is unsuccessful in obtaining its demands is immaterial in determining whether or not claimant nonunion employees are disqualified from obtaining benefits under the unemployment compensation act as long as such claimants are directly interested in the outcome of the labor dispute (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

4. Same—Labor Dispute—Direct Interest of Claimant—Eligibil-
   ity for Benefits.

    A labor dispute that affects the wages, hours of work, and gen-
eral conditions of employment causes all employees concerned
to be directly interested within the meaning of provisions of
the unemployment compensation act relating to disqualification
of claimants for benefits (Act No. 1, § 29, subd. [c], Pub.
Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts
1941).

5. Same—Eligibility for Benefits—Nonunion Employees—Labor
   Dispute—Direct Interest of Claimant—Participation—Financ-
   ing.

    Nonunion employees who had no dispute with employer and were
ready, willing and able to work but prevented from doing so
because of picket line established by union employees were
disqualified for benefits under the unemployment compensation
act since the stoppage of work was due to a "labor dispute"
within the meaning of that term as used in the act, notwith-
standing they did not participate in or finance such dispute
where the appeal board of the unemployment compensation
commission found that such claimants were directly interested
in the labor dispute involving adjustment of grievances and
seniority rights (Act No. 1, § 29, subd. [c], Pub. Acts 1936
[Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

Appeal from Muskegon; Sanford (Joseph S.), J.
Submitted January 16, 1946. (Docket No. 40, Calen-
dar No. 43,066.) Decided March 4, 1946.

Certiorari by Leon D. Nobes and others to review
the action of appeal board of the Michigan unem-
ployment compensation commission in denying
claims for unemployment compensation. From
judgment affirming decision of appeal board, plain-
tiffs appeal. Affirmed.

*Robert A. Carr* and *George H. Cross,* for plain-
tiffs.

*John R. Dethmers,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *Daniel J. O'Hara,*

*A. W. Brown,* and *Florence Clement Booth,* Assistants Attorney General, for defendant.

*C. N. Sessions,* for Shaw-Walker Company, employer.

NORTH, J.    Plaintiff and numerous other employees of the Shaw-Walker Company of Muskegon sought unemployment compensation for a period from September 10 to November 3, 1941, during which time there was a stoppage of work in the Shaw-Walker Company's plant.  Their claims of unemployment compensation were .denied by the defendant commission.    On hearing before a referee there was denial of these.claims, and again on appeal taken by claimants to the appeal board their claims were denied.    Thereafter on certiorari to the circuit court of Muskegon county denial of the claims was affirmed.    This appeal is from the judgment entered in the circuit court.

For convenience and brevity we herein refer to Leon D. Nobes as plaintiff, to the Shaw-Walker Company as employer, and to the Michigan unemployment compensation commission as the commission.    Denial of unemployment compensation to plaintiff (and other claimants) was on the grounds that the stoppage of work during the period for which plaintiff was unemployed was due to a labor dispute in the employer's establishment within the meaning of section 29, subd. (c), of the Michigan unemployment compensation act, and that plaintiff and each of the other claimants were directly interested in such labor dispute within the meaning of the unemployment compensation act.    Plaintiff and appellant contends that each of the above holdings is erroneous,

Whether under the facts and circumstances of this case plaintiff was disqualified for benefits under the unemployment compensation act must be determined in the light of section 29, subd. (c), in which it is provided that an individual shall be disqualified for benefits:

"(c) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed: Provided, however, That no individual shall be disqualified under this section if he shall establish that he is not directly involved in such dispute. For the purpose of this section, no individuals shall be deemed to be directly involved in a labor dispute unless it is established: * * *

"(2) That he is participating in or financing or directly interested in the labor dispute which caused the stoppage of work: Provided, however, That the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this subsection." Act No. 1, § 29, subd. (c), Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 8485-69, Stat. Ann. 1941 Cum. Supp. § 17.531).

The factual background to which the law must be applied in the instant case is substantially as follows. In 1941, June 3d, the United Furniture Workers of America, Local No. 416, affiliated with the CIO, made an unsuccessful effort in an election among the employees of the defendant employer to have the union recognized as sole bargaining agent for the employees of the Shaw-Walker Company. Notwithstanding the unsuccessful results of their efforts in the election, the union employees of defendant company renewed their demand for recognition of the union as the sole bargaining agency for all the company's production and maintenance em-

ployees, and also demanded that the company establish the steward system for presentation of grievances and that the company adopt and publish seniority lists. However, on September 8, 1941, just prior to the strike becoming effective, the union modified its demand as to exclusive bargaining rights for *all* employees, and advised the company that it only demanded the right to be the sole bargaining agency for the employees who were members of the union. The company refused the union's demands, and on September 10th, the strike became effective, a picket line was established at the plant which barred all workers and resulted in complete cessation of work in the plant for both union and nonunion employees which continued until November 3, 1941.

Leon D. Nobes and the other appellants herein were not union members; and it is a fair inference from the record that they were opposed to recognition of the union in the employer's establishment. On this appeal they take the position that the stoppage of work which caused their unemployment was not "due to a labor dispute actively in progress in the Shaw-Walker Company's plant within the meaning of the Michigan unemployment act." We think it is too clear for argument that appellants' contention in this particular is not tenable.

On this phase of their appeal appellants point out, as the record discloses, that at the outset the union demanded collective bargaining rights for *all* of the employees of the defendant employer, but just prior to calling the strike the union advised the employer it would be satisfied in this particular if granted the collective bargaining rights for only such of the employees as were members of the union; and, after the strike was in progress, the union reverted to its original demand—that it should be the bargaining

agent for *all* of the employees. Appellants' position is thus stated in their brief:

"It is the contention of plaintiffs and appellants that the original demand of the union for recognition as the sole bargaining agent of its members, was the dispute which caused the stoppage of work, and that such demand is not a labor dispute within the meaning of the unemployment compensation act.
\* \* \*

"It is the dispute which causes the stoppage of work that determines the rights of the claimants, and any dispute that may subsequently develop, by the union increasing its demands, or making new demands upon the employer, cannot be considered in determining the rights of employees to unemployment compensation, as such subsequent demands are not the dispute which causes the stoppage of work.
\* \* \*

"The claimants were ready, willing and able to work at all times, and were only prevented by the picket line which the union threw around the plant, and neither the claimants or any one authorized to represent them as their statutory collective bargaining agent had any dispute with the employer."

Conceding that in its factual aspect appellants' claim is correct, still it does not follow that the stoppage of work was not caused by a labor dispute. The union employees demanded, among other things, that the union be given the exclusive right of bargaining. This demand, though subsequently somewhat modified in scope, was resisted by the employer both before and during the period of the strike; and as stated in appellants' brief: "The claimants \* \* \* were only prevented (from working) by the picket line which the union threw around the plant." The circuit judge correctly held that the stoppage of work was due to a labor dispute within the meaning of the statute.

A further position taken by appellants is indicated by the only other question presented in their brief:

"Assuming that plaintiffs' unemployment was due to a labor dispute, were the plaintiffs participating in, or financing, or directly interested in such labor dispute?"

It appears from the record quite beyond controversy that plaintiffs did not participate in the labor dispute or assist in financing it. So the issue narrows down as to whether the circuit court and the various administrative agencies, which have participated in hearing and passing upon this controversy, were correct in holding that appellants were directly interested in the labor dispute, as provided in section 29, subd. (c) above quoted.

The appeal to the circuit court was by certiorari; and the circuit judge in his opinion made the following observation:

"This court has no authority to reverse any findings of fact by the appeal board unless same is contrary to the great weight of the evidence.† * * *

"A careful study of the entire proceedings and the authorities cited by counsel forces me to the conclusion that the finding of facts by the appeal board, so far as they affect the decision in this case, are amply supported by the evidence and that therefore, the decision of the board must stand."

In accord with the findings of the appeal board the circuit judge included in his opinion the following:

"In addition to the demand that the union be recognized as sole bargaining agent for its members,

---

† See Act No. 1, § 38, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 8485–78, Stat. Ann. 1945 Cum. Supp. § 17.540); and *Palmer* v. *Unemployment Compensation Commission*, 310 Mich. 702 (158 A. L. R. 909).

the union persistently demanded the steward system of presenting and adjustment of grievances that might arise among any of the employees, which system had been opposed by the company, and the setting up of seniority rights for all of the employees. * * * Claimants, who were not members of the union and had nothing whatever to do with the calling of the strike, were nevertheless interested in the two latter demands, and would have been affected by these systems being installed.

"The stoppage of work and the strike occurred because of the labor dispute growing out of the company's refusal to recognize the union as sole bargaining agent for its own members and because of its refusal to install the steward system of presenting and adjusting grievances and the setting up of a seniority rights system for all of the employees.

"Even though claimants were not members of the union and not in sympathy with the strike, they were nevertheless directly interested in the steward system for presenting and adjustment of grievances and seniority rights system, and were directly interested in the labor dispute so far as future conditions of work were concerned. The installation of the steward system and seniority rights system would directly affect them in their future employment with the company and they are disqualified from obtaining unemployment compensation."

While there is some uncertainty at least, and possibly conflict, in the testimony as to whether in a material way the strike involved the question of the employer putting into effect among all employees a seniority rights system, there is competent testimony in support of the conclusion of the appeal board, which was affirmed by the circuit judge, that this matter of establishing a system of seniority rights, posting the lists, et cetera, was one of the demands of the union involved in this strike controversy. Further, while in a technical sense a steward

system which was demanded by the union was not accomplished as the result of the strike, it was arranged that a system should be put into effect whereby grievances of employees might be presented to foremen for adjustment. And in any event it is quite immaterial (if claimants are directly interested in the labor dispute) whether the union did or did not actually succeed in its demands. *Lawrence Baking Co.* v. *Unemployment Compensation Commission*, 308 Mich. 198, 208 (154 A. L. R. 660). The union did not obtain the bargaining rights which it demanded.

The circuit judge in reaching his decision, as did the appeal board, relied much upon our decision in *Chrysler Corp.* v. *Smith*, 297 Mich. 438 (135 A. L. R. 900), wherein it was stated that an employee is directly interested in a labor dispute if his wages, hours, or conditions of work will be affected by the outcome of the dispute. One of the headnotes in that case reads:

"A labor dispute that affects the wages, hours of work, and general conditions of employment causes all employees concerned to be directly interested within the meaning of provisions of the unemployment compensation act relating to disqualification of claimants for benefits."

And it might be well said in the instant case, as in the *Chrysler Case, supra* (p. 452): "The labor dispute involved new contract provisions in which claimants were directly interested, and the stoppage of work and the calling of a strike * * * were well calculated to bring about a new contract of employment of direct interest to all claimants." In consequence we held in the *Chrysler Corporation Case* that all claimants were "directly interested" in the labor dispute which caused the stoppage of work.

Review of this record discloses the circuit judge was correct in finding that in the particulars above noted in the instant case conditions of work with which these claimants, as well as the union employees, would be affected, were involved in the outcome of the labor dispute. It follows that the claimants herein were directly interested in the labor dispute which caused the stoppage of work. The circuit judge correctly so held.

Appellants cite some decisions from other jurisdictions in support of their contention that they were not directly interested in this labor dispute; but such decisions involved both statutory provisions and facts differing from those in the instant case, and in any event if not distinguishable in these respects the construction of pertinent statutory provisions in those decisions differs from that in this jurisdiction.

The judgment in the circuit court affirming the holding of the appeal board which denied claimants unemployment compensation is affirmed. Appellees will have costs of this Court.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Reid, and Starr, JJ., concurred.