44 So.2d 587
### DEPARTMENT OF INDUSTRIAL RE- LATIONS v. LITTLE MFG. CO., Inc.

3 Div. 541.

Supreme Court of Alabama.

Feb. 2, 1950.

Rehearing Denied March 9, 1950.

J. Eugene Foster and Aubrey M. Cates, Jr., of Montgomery, for appellant.

**SIMPSON, Justice.**

The single question is whether a benefit wage percentage of 8.16% is a percentage equal to or a percentage in excess of 8%, within the meaning of the experience rating provisions of the state unemployment compensation law.

Resolution of this question will determine whether the benefit wage percentage of 8.16% found by the director to be the appellee's benefit wage percentage for the calendar year 1948 calls for the application of column 2 on the line with a state experience factor of 16%, § 204(F), Title 26, Code 1940, or whether it constitutes a percentage requiring application of the 12% classification appearing in column 3 of said table, with employer and employee contribution rates resulting accordingly.

Section 204(F), with reproduction of enough of the table for a proper understanding of the case, is as follows:

"The contribution rates for each employer and his employees effective for each twelve-month period beginning with the first day of April of each year as provided in subsection A of this section * * * shall be determined from the following table and shall be the rates, as indicated for employers and employees respectively, appearing at the bottom of the lowest numbered column in which there appears, on the same horizontal line in which is found in the column headed 'state experience factor,' the state experience factor for the then calendar year, a percentage *equal to*

James J. Carter and Hill, Hill, Stovall & Carter, of Montgomery, for appellee.

or *in excess of* such employer's benefit wage percentage for the then calendar year. * * *

■ The rule of canonical construction by which we are guided is that where the language of a statute is clear and unam-

| "State Experience Factor" | Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 |
|---|---|---|---|---|---|---|
| | Employer's Benefit Wage Percentage | | | | | |
| 1% | 60% | 130% | 200% | 270% | 340% | Benefit Wage Percentages |
| * * | * * | * * | * * | * * | * * | in excess of |
| 16 | 4 | 8 | 12 | 17 | 21 | Column 5 of this |
| * * | * * | * * | * * | * * | * * | table. |
| Employer's Contribution Rate | 0.5% | 1.0% | 1.5% | 2.0% | 2.5% | 2.7% |
| Employees' Contribution Rate | 0.1% | 0.3% | 0.5% | 0.7% | 0.9% | 1.0%" |

(Emphasis supplied.)

The department established that appellee's correct benefit wage percentage was 8.16% with a state experience factor of 16%, and ruled that column 3 applied in determining the employer's and employees' contribution rates, rather than column 2, reasoning that 8.16% was not "equal to" and was "in excess" of 8%, thereby necessitating the application of column 3. On an appeal to the circuit court, that court held that for the purpose of the experience rating provision of the law, a benefit wage percentage of 8.16% within the meaning of the statute was equal to and not in excess of a benefit wage percentage of 8% and ordered that the appellee's tax rates for the stated period be accordingly re-determined as governed by column 2 of the table, *supra*.

The appeal challenged the correctness of this latter ruling and we are in accord with the appellant's contention and can find no basis for saying that the legislature intended that a benefit wage percentage of 8.16% is the same as a percentage of 8% and is not a percentage "in excess" of 8%.

biguous and the meaning obvious, there is no room for construction, but the court will confine itself to the language as it is and not invade the legislative realm by imposing upon the plain meaning of the statute a possible or probable different meaning. Henry v. McCormack Bros. Motor Car Co., 232 Ala. 196, 167 So. 256.

■ In essence we are asked, in order to sustain the ruling below, to disregard fractional percentages and to conclude that it ought to be presumed that the legislature intended that fractions over 8% and under 8.5% be considered as 8% and fractions of ½% and over be considered as in excess of 8%; that since the fractional percentage was less than one-half per cent (8.16%), column 2 (for 8%) be held to apply. We do not think the act to be susceptible of such an interpretation. Its language seems plain and unambiguous to us. Other provisions thereof clearly indicate an understanding by the legislature of the meaning of the terms "equal to" and "in excess of" and that it understood the meaning of fractional percentages and did not intend that they be disregarded in arriving at the prop-

er formula for experience rating. This seems to be clearly implied from other sections which do provide for the adjusting of fractions to the next even number. § 208, in providing for payments of weekly benefit for unemployment, provides that "such benefit, if not a multiple of one dollar, shall be computed to the nearest multiple of one dollar." § 204(G), subdiv. (1), regarding the determining of the "benefits pay roll ratio" of the state, achieves the percentage by "adjusting the quotient to the nearest multiple of one thousandth"; § 204 (E), in defining the manner in which the state experience factor shall be determined and computations made, provides that the percentage obtained from the formula set out should be adjusted "to) the next higher multiple of one per cent"; and in § 204(F), the contribution rates for employers and employees themselves may be fractional, such as .5%, 1% and 1.5%, etc.,—all seemingly indicating a familiarity of the legislature with percentages of less than multiples of one per cent. We rationalize, therefore, that since the legislature showed a familiarity with dealing in fractional percentages and specified in the above instances, respectively, for the adjustment to the nearest multiple of $1, to the nearest multiple of 1/1000th of a per cent, and to the next high multiple of 1%, if it had intended that the adjustment in the instance here considered be made to the nearest multiple percentage, it would have and, certainly, should have specifically said so.

■ Words in common use should be given their natural and commonly understood meaning in the absence of statutory or a well-established technical meaning to the contrary. Stated otherwise, plain words should be given their ordinary signification unless it is clear from the statute that a different meaning was intended, or unless such construction would defeat the manifest intention of the legislature. Edwards v. Doster-Northington, 214 Ala. 640, 108 So. 862; Ex parte Pepper, 185 Ala. 284, 64 So. 112; 59 Corpus Juris 974, § 577; 50 Am. Jur. 227, § 238.

■ So, construing the statute in the light of the well-established principle, we see no occasion to impart to the unambiguous expressions "equal to" and "in excess of" any other than their commonly understood meaning. These terms are in common use and are simple words. "Equal to" means "sameness of quantity or degree, the same" 30 C.J.S., page 292. Webster's New International Dictionary defines "equal" as "one not inferior or superior to another; * * * state of being equal." Another definition is that it means "'even,' 'sameness of quantity or degree,' 'the same.'" In re Merritt's Estate, Sur., 180 N.Y.S. 877, 879.

And "in excess of" connotes "more than." The expression has been correctly defined as "the degree or amount by which one thing or number exceeds another, and the remainder or the difference between two numbers is the excess of one over the other." In re Bunce's Estate, 100 Misc. 385, 165 N.Y.S. 426. For another apt definition see Rasp v. City of Omaha et al., 113 Neb. 463, 203 N.W. 588, 589, to wit: "* * * excess as applied to figures involves the idea of a comparison between two amounts * * *." Webster defines excess as "the amount or degree by which one thing or number exceeds another * * *."

Practically speaking, to the lay mind not versed in dealing in metaphysical calculations, 8.16% would indubitably seem to be in excess of 8%. If the price of an article of merchandise is 8¢ per pound, no housewife could be persuaded to pay 8.16¢ per pound; and if there were a bond issue at the rate of 2%, no system of abstruse, mathematical computation, we are sure, could persuade the issuer that the accrued interest should be 2.16%. In the realm of tax matters, such as here, the differences in such percentages are of much more importance than in small transactions and we are not willing to assert with any degree of certainty that the legislature intended that we disregard the clear meaning of these express terms.

420

This analysis of the subject has been tendered out of deference to the earnest argument of able counsel to sustain the ruling below, but we think the case of Metcalf v. Department of Industrial Relations, 245 Ala. 299, at page 302, 16 So.2d 787, at page 792, has already indicated the court's construction of the statute and its opinion on the precise question, where it was observed:

"For example, in the case at bar the State Experience Factor was found by the Director to be 13%. The Employer's Benefit Wage Percentage was found by the Director to be 5.1%. The horizontal line in the Table, Title 26, § 204(F), for the State Experience Factor of 13% reads:

| "Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 |
|---------|--------|--------|--------|--------|
| 5 | 10 | 15 | 21 | 26 |

"The column must be selected in which appears on that horizontal line a percentage equal to or in excess of the Employer's Benefit Wage Percentage. *If that percentage had been 5, Column 1 would have been selected, but since the Director found it to be 5.1, Column 2 must be selected, or the same as if the Benefit Wage Percentage had been 10.* * * *" (Emphasis supplied.)

It is argued that the foregoing observations were *dictum*, but that does not detract from the fact that the court, as then constituted, did consider the question and indicated its view as to the meaning of the two terms and the intention of the legislature in so using them. No doubt the Department accepted this construction as authentic and has been operating accordingly, and since we think it is a proper construction we are not now disposed to depart therefrom.

So considered, the order and judgment of the trial court is reversed and one will be here rendered affirming the order entered by the Department of Industrial Relations.

Reversed and rendered.

BROWN, FOSTER, LAWSON, and STAKELY, JJ., concur.